UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

JOAN CAMPRUBÍ MONTAL and KATHLEEN BEATTY, ESQ. as Proposed Personal Representatives of the Estates of AGUSTÍN ESCOBAR CAÑADAS, deceased, MERCE CAMPRUB Í MONTAL, deceased, AGUSTÍN ESCOBAR CAMPRUBÍ, deceased, MERCE ESCOBAR CAMPRUBÍ, deceased and VICTOR ESCOBAR CAMPRUBÍ, deceased, and on behalf of all Surviving Beneficiaries,

Plaintiffs,

v.

NEW YORK HELICOPTER CHARTER INC., NEW YORK HELICOPTER TOURS LLC, MICHAEL ROTH, an Individual, MERIDIAN HELICOPTERS, L.L.C., BELL TEXTRON INC., and VAN HORN AVIATION, L.L.C.

Defendants.

-----------------------------------------------------------x

Case No.: 1:26-cv-03332-VSB

**AMENDED**
**<u>COMPLAINT</u>**

Plaintiffs JOAN CAMPRUBÍ MONTAL and KATHLEEN BEATTY, Esq., as Proposed Personal Representatives of the Estates of AGUSTÍN ESCOBAR CAÑADAS, deceased, MERCE CAMPRUBÍ MONTAL, deceased, AGUSTIN ESCOBAR CAMPRUBÍ, deceased, MERCE ESCOBAR CAMPRUBÍ, deceased, and VÍCTOR ESCOBAR CAMPRUBÍ, deceased, and on behalf of all surviving beneficiaries, by and through their attorneys, Kreindler & Kreindler LLP and Gersowitz Libo & Korek, P.C. complaining of defendants herein, upon information and belief respectfully allege as follows:

## INTRODUCTION

1. On April 10, 2025, at approximately 3:15 p.m., a sight-seeing helicopter carrying five passengers and one pilot broke apart in midair following a mechanical failure of the tailboom.

The helicopter then inverted and crashed into the Hudson River. The pilot and Plaintiff's decedents, Agustin Escobar Cañadas, Merce Camprubi Montal and Merce Escobar Camprubi, suffered injuries and perished in the Hudson River. First responders rescued Plaintiff's decedents, Agustin Escobar Camprubi and Víctor Escobar Camprubi, from the Hudson River. They later perished at the Jersey City Medical Center.

2. This is an action for punitive and compensatory damages against the parties that owned, operated, manufactured and maintained the helicopter and its components.

**PARTIES**

3. Plaintiff JOAN CAMPRUBI MONTAL is the surviving brother of decedent Merce Camprubi Montal, brother-in law of decedent Agustin Escobar Cañadas and uncle of decedents Agustin Escobar Camprubi, Merce Escobar Camprubi, and Víctor Escobar Camprubí.

4. At all relevant times, Plaintiff, JOAN CAMPRUBI MONTAL, resided in Barcelona, Spain.

5. Decedent Merce Camprubi Montal was the wife of decedent Agustin Escobar Canadas and mother of the minor decedents Agustin Escobar Camprubi, Merce Escobar Camprubi, and Víctor Escobar Camprubí. Prior to sustaining serious personal injuries on April 10, 2025, to which she ultimately succumbed at age thirty-nine, she treasured her life both as a mother of three young children and as a professional, employed as a Global Commercialization Manager by Siemens Energy in Barcelona, Spain. She is survived by her parents, Joan Camprubi and Mercedes Montal, as well as her brother Joan Camprubi Montal and sister Berta Camprubi Montal.

6. Decedent Agustin Escobar Canadas was the husband of decedent Merce Camprubi Montal and father of the minor decedents Agustin Escobar Camprubi, Merce Escobar Camprubi and Victor Escobar Camprubi. Prior to sustaining serious personal injuries on April 10, 2025, to

which he ultimately succumbed at age forty-nine, he enjoyed a successful career as the Global Chief Executive Officer of Rail Infrastructure at Siemens Mobility, as well as the Chief Executive Officer of Siemens Spain and Siemens Mobility Southwest Europe, where he was lauded as a visionary and key component to the success of Siemens by his colleagues. He is survived by his parents Agustin Escobar and Josefina Canadas, as well as his sister Maria Jose Escobar Canadas.

7. Decedent Merce Escobar Camprubi was the daughter of decedents Agustin Escobar Canadas and Merce Camprubi Montal, and the sister of minor decedents Agustin Escobar Camprubi and Victor Escobar Camprubi who was one day shy of her ninth birthday when she sustained serious personal injuries on April 10, 2025, to which she ultimately succumbed. She is survived by her grandparents Augustin Escobar, Josefina Canadas, Joan Camprubi and Mercedes Montal, as well as several aunts and uncles.

8. Decedent Victor Escobar Camprubi was the son of decedents Agustin Escobar Canadas and Merce Camprubi Montal, and the brother of minor decedents Merce Escobar Camprubi and Agustin Escobar Camprubi who was only four years old when he sustained serious personal injuries on April 10, 2025, to which he ultimately succumbed. He survived the crash and received cardiopulmonary resuscitation, left resuscitative thoracotomy, pericardiotomy, cardiac massage, intracorporal defibrillation and a right chest tube placement as doctors desperately tried, to no avail, to save his young life. He is survived by his grandparents Augustin Escobar, Josefina Canadas, Joan Camprubi and Mercedes Montal, as well as several aunts and uncles.

9. Decedent Agustin Escobar Camprubi was the son of decedents Agustin Escobar Canadas and Merce Camprubi Montal, and the brother of minor decedents Merce Escobar Camprubi and Victor Escobar Camprubi who was only ten years old when he sustained serious personal injuries on April 10, 2025, to which he ultimately succumbed. He survived the crash and

received extensive treatment in an effort to save his life. His injuries were ultimately too severe and he later passed away at the Jersey City Medical Center. He is survived by his grandparents Augustin Escobar, Josefina Canadas, Joan Camprubi and Mercedes Montal, as well as several aunts and uncles.

10. At all relevant times, decedents Merce Camprubi Montal, Agustin Escobar Cañadas, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi all resided in Barcelona, Spain.

11. Plaintiffs JOAN CAMPRUBI MONTAL and KATHLEEN BEATTY, as Proposed Personal Representatives of the Estates of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi have legal standing, capacity and authority to assert the claims herein. Plaintiffs are anticipated to be appointed Co-Personal Representatives of the Estates of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi by order of the Surrogate's Court of the State of New York, in and for the County of New York.

## **NEW YORK HELICOPTER CHARTER INC.**

12. At all relevant times including April 10, 2025, defendant NEW YORK HELICOPTER CHARTER INC. (hereinafter "NYHC") was, and remains, a domestic business corporation existing under and by virtue of the laws of the State of New York.

13. At all relevant times including April 10, 2025, NYHC was a helicopter tour operator engaged in the business of advertising and conducting sightseeing flights, charter tours and helicopter rides offering views of the New York City skyline and other local landmarks.

14. At all relevant times including April 10, 2025, NYHC transacted, conducted, carried on, and/or solicited business in the City, County, and State of New York.

15. At all relevant times including April 10, 2025, NYHC engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the City, County, and State of New York.

16. At all relevant times including April 10, 2025, NYHC expected, or should have reasonably expected its acts to have consequences within the City, County, and State of New York.

**NEW YORK HELICOPTER TOURS LLC.**

17. At all relevant times including April 10, 2025, defendant NEW YORK HELICOPTER TOURS LLC. (hereinafter "NYHT") was, and remains, a domestic business limited liability company existing under and by virtue of the laws of the State of New Jersey.

18. At all relevant times including April 10, 2025, NYHT was a helicopter tour operator engaged in the business of advertising and conducting sightseeing flights, charter tours and helicopter rides offering views of the New York City skyline and other local landmarks.

19. At all relevant times including April 10, 2025, NYHT transacted, conducted, carried on, and/or solicited business in the City, County, and State of New York.

20. At all relevant times including April 10, 2025, NYHT engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the City, County, and State of New York.

21. At all relevant times including April 10, 2025, NYHT expected, or should have reasonably expected its acts to have consequences within the City, County, and State of New York.

**MICHAEL ROTH**

22. At all relevant times including April 10, 2025, Defendant MICHAEL ROTH (hereinafter "ROTH") was, and remains, a resident of the State of New York.

23. At all relevant times including April 10, 2025, ROTH was the owner, chief executive and sole shareholder of NYHC and NYHT.

24. On April 10, 2025, prior to and at the time of the subject crash, ROTH was responsible for the daily operations of NYCH and NYHT.

25. At all relevant times including April 10, 2025, ROTH transacted, conducted, carried on, and/or solicited business in the City, County, and State of New York.

26. At all relevant times including April 10, 2025, ROTH engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the City, County, and State of New York.

27. At all relevant times including April 10, 2025, ROTH expected, or should have reasonably expected its acts to have consequences within the City, County, and State of New York.

**BELL TEXTRON, INC.**

28. At all relevant times including April 10, 2025, Defendant Bell Textron, Inc. (hereinafter "BELL") was and remains a Delaware corporation with its principal place of business in Fort Worth, Texas.

29. At all relevant times including April 10, 2025, Defendant BELL was engaged in the business of designing, manufacturing, testing, certifying, inspecting, marketing, maintaining, distributing and selling helicopters and the equipment installed thereon.

30. At all relevant times including April 10, 2025, Defendant BELL was and is registered to do business in New York and has a Registered Agent in New York.

31. At all times including April 10, 2025, Defendant BELL transacted and was and is doing business within the State of New York.

32. At all times including April 10, 2025, Defendant BELL repeatedly solicited business within the State of New York.

33. At all times including April 10, 2025, Defendant BELL manufactured, produced and distributed goods with the reasonable expectation that such goods would be sold or used within the State of New York, and under the New York log-arm statute had contacts with the State of New York sufficient for this Court to exercise jurisdiction over this Defendant.

34. At all relevant times including April 10, 2025, BELL expected, or should have reasonably expected its acts to have consequences within the State of New York.

35. At all relevant times including April 10, 2025, BELL engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the State of New York.

**VAN HORN AVIATION, LLC.**

36. At all relevant times including April 10, 2025, Defendant Van Horn Aviation, L.L.C. (hereinafter "VHA") was and remains a privately owned company with its principal place of business in Tempe Arizona.

37. At all relevant times including April 10, 2025, Defendant VHA was engaged in the business of designing, manufacturing, testing, certifying, inspecting, marketing, maintaining, distributing and selling composite rotor blades for various helicopters, including the accident helicopter.

38. At all times including April 10, 2025, Defendant VHA transacted and was and is doing business within the State of New York.

39. At all times including April 10, 2025, Defendant VHA repeatedly solicited business within the State of New York.

40. At all times including April 10, 2025, Defendant VHA manufactured, produced and distributed goods with the reasonable expectation that such goods would be sold or used within the State of New York, and under the New York log-arm statute had contacts with the State of New York sufficient for this Court to exercise jurisdiction over this Defendant.

41. At all relevant times including April 10, 2025, VHA expected, or should have reasonably expected its acts to have consequences within the State of New York.

42. At all relevant times including April 10, 2025, VHA engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the State of New York.

**MERIDIAN HELICOPTERS L.L.C.**

43. At all relevant times including April 10, 2025, defendant MERIDIAN HELICOPTERS, L.L.C. (hereinafter "MERIDIAN") was, and remains, a domestic business corporation with a principal place of business in Broussard, Louisiana.

44. At all relevant times including April 10, 2025, MERIDIAN was engaged in the business of selling, providing brokerage services and leasing helicopters.

45. At all relevant times including April 10, 2025, MERIDIAN transacted, conducted, carried on, and/or solicited business in the State of New York.

46. At all relevant times including April 10, 2025, MERIDIAN engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed, or services rendered, in the State of New York.

47. At all relevant times including April 10, 2025, MERIDIAN expected, or should have reasonably expected its acts to have consequences within the State of New York.

48. At all times including April 10, 2025, Defendant MERIDIAN manufactured, produced and distributed goods with the reasonable expectation that such goods would be sold or used within the State of New York, and under the New York log-arm statute had contacts with the State of New York sufficient for this Court to exercise jurisdiction over this Defendant.

49. At all relevant times including April 10, 2025, MERIDIAN engaged in other persistent courses of conduct and/§or derived substantial revenue from goods used or consumed, or services rendered, in the State of New York

## **JURISDICTION AND VENUE**

50. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of diverse states and the amount in controversy exceeds $75,000. Venue is proper in this District under 28 U.S.C. §1391(b) in that the cause of action occurred in this District and Defendant do business in this District or are otherwise subject to the Court's personal jurisdiction with respect to this action.

51. Plaintiffs are expected to be appointed Personal Representatives of the Estates of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi by the Surrogate's Court of New York County.

## **FACTUAL BACKGROUND**

52. On April 10, 2025, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi were passengers on a Bell 206L-4 helicopter, bearing the registration number N216MH (hereinafter “the helicopter”), which was scheduled to conduct a sight-seeing tour (hereinafter “the subject flight”) over and around Manhattan.

53. At all relevant times including April 10, 2025, BELL manufactured the helicopter in 2004.

54. At all relevant times including April 10, 2025, MERIDIAN owned, leased, maintained, inspected, repaired and/or otherwise controlled the helicopter.

55. At all relevant times including April 10, 2025, NYHC leased, operated, maintained, inspected, repaired and/or otherwise controlled the helicopter.

56. At all relevant times including April 10, 2025, NYHT leased, operated, maintained, inspected, repaired and/or otherwise controlled the helicopter.

57. At all relevant times including April 10, 2025, NYHC employed, trained and supervised the pilot-in-command of the subject flight.

58. At all relevant times including April 10, 2025, NYHT employed, trained and supervised the pilot-in-command of the subject flight.

59. At all relevant times including April 10, 2025, the helicopter was equipped with main rotor blades manufactured by VHA.

60. Upon information and belief, the VHA main rotor blades were installed on the helicopter in the Spring of 2024 and had approximately 1000 hours of use at the time of the accident.

61. On April 10, 2025, NYHC operated and conducted the subject flight under Federal Aviation Regulation (hereinafter "FAR") Part 91.

62. On April 10, 2025, NYHT operated and conducted the subject flight under FAR Part 91.

63. The subject flight took off from the Downtown Manhattan/Wall Street Heliport, New York, NY at or about 2:58 p.m.

64. While the helicopter was airborne near the Holland tunnel ventilation towers, it suddenly sustained an in-air breakup.

65. The in-air breakup resulted in the helicopter separating into three major sections consisting of the fuselage/engine, the main rotor system and the tail boom

66. The fuselage crash landed in an inverted position, north of the Holland Tunnel ventilation towers where the water depth was about 6 feet. The main rotor and tail boom sections were found north of the fuselage and submerged to a depth of about 30 feet.

67. The passengers all ultimately suffered severe personal injuries and lost their lives after they experienced unspeakable fear and terror of impending death.

68. Following the accident, on April 13, 2025 the FAA requested via telephone to Mr. Jason Costello, the Director of Operations for NYHT and NYHC, that NYHT and NYHC cease operations due to safety concerns until the FAA and NTSB investigations were complete. Mr. Costello agreed that all operations would cease as requested.

69. Approximately thirty minutes after the phone call, Mr. Costello confirmed via email to the FAA that all operations would cease until the accident investigations being conducted by the FAA and NTSB were complete.

70. Approximately sixteen minutes after email confirmation from Mr. Costello that all operations would cease until completion of the FAA and NTSB investigations, ROTH, advised the FAA and NTSB that he would not cease operations and that Jason Costello was no longer an employee.

71. The FAA concluded that ROTH retaliated against Mr. Costello for agreeing to the request from the FAA to cease operations until the FAA and NTSB investigations were complete. NYHT and NYHC were left without a qualified Director of Operations and as a result, NYHC and NYHT were ordered to cease operations and to surrender Air Carrier Certificate NY9A9001 or face further legal enforcement including a civil penalty.

**AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST DEFENDANT NEW YORK HELICOPTER CHARTER, INC. FOR NEGLIGENCE AND WRONGFUL DEATH**

72. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

73. At all relevant times including April 10, 2025, NYHC was a commercial helicopter company and common carrier that transports passengers for hire on charter, tour, photography and/or sightseeing flights throughout the New York City area for compensation.

74. NYHC, as the helicopter's operator, was responsible for the safety of its passengers during its flights.

75. At all relevant times including April 10, 2025, NYHC owed their passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi duties as a common carrier and commercial charter helicopter carrier, including but not limited to the duty to exercise reasonable care in the

maintenance, control, and operation of the helicopter so as not to cause injury or death to its passengers.

76. At all relevant times including April 10, 2025, NYHC had a non-delegable duty to ensure that the work performed by its employees, agents, servants and/or contractors, including but not limited to tour operators and pilots, was conducted in a safe and competent manner, and in such a way that did not present a potential risk to public safety or to its fare-paying passengers.

77. At all relevant times including April 10, 2025, NYHC was aware that performing required maintenance on the helicopter was critical to ensure air worthiness and the safety of the passengers.

78. At all relevant times including April 10, 2025, NYHC was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades. Once delamination occurs, the main rotor blades are subject to premature failure.

79. At all relevant times including April 11, 2025, NYHC was aware, or should have been aware, of Airworthiness Directive AD-2021-01081-R that called for the repetitive inspection for delamination of the main rotor blades installed on the accident aircraft.

80. At all relevant times including April 11, 2025, NYHC was required to comply with Airworthiness Directive AD-2021-01081-R and identify signs of delamination to prevent the failure of the main rotor blades and to ensure the safety of their customers and passengers.

81. On April 10, 2025, NYHC breached the aforesaid duties to passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, in one or more of the following respects:

a. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform required maintenance on the helicopter to ensure that the helicopter was in satisfactory condition so that it would not present a risk of unreasonable harm to the passengers;

b. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform a preflight inspection on the helicopter;

c. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to ensure that the pilot was appropriately trained and competent to handle any inflight emergency;

d. by and through the careless, negligent, and reckless failure of its pilot, to properly diagnose and respond to the inflight emergency that occurred on the subject flight, for which NYHC is vicariously liable by virtue of the theory of *respondeat superior*, as described in further detail herein;

e. by carelessly, negligently, recklessly and/or with willful and wanton disregard for passenger safety, failing to provide air transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

f. by carelessly, negligently, recklessly, and/or with willful and wanton disregard for passenger safety, failing to properly inspect, overhaul, repair,

equip, modify and maintain the helicopter in an airworthy and safe condition;

g. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, operating without a properly qualified or effective Director of Safety and/or safety officer, and ignoring policies, procedures and safety management systems in place at NYHC to protect passenger safety;

h. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring policies, procedures and safety management systems in place within the company to protect passenger safety;

i. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring Airworthiness Directive AD-2021-01081-R that would have led to the discovery of delamination;

j. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, failing to inspect the main rotor blades for any signs of delamination;

k. by negligently failing to properly employ, supervise and train the pilot to ensure the safe and proper operation of the helicopter;

l. by negligently selecting, hiring, retaining, supervising, training, overseeing and controlling its agents, servants and employees in a manner reasonably calculated to ensure that its helicopters were properly maintained, inspected

and equipped, and that its pilots were capable of safely and properly operating its helicopters; and

m. by otherwise carelessly, negligently and/or recklessly failing to operate the helicopter with due care and caution in accordance with applicable procedures and safe practices.

82. As a direct and proximate result of the carelessness, negligence, recklessness, and/or willful and wanton disregard of passenger safety of NYHC, and their breach of their duties and failure to exercise the level of care appropriate and reasonable for the subject flight, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A SECOND CAUSE OF ACTION AS AGAINST DEFENDANT NEW YORK HELICOPTER TOURS, LLC. FOR NEGLIGENCE AND WRONGFUL DEATH**

83. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

84. At all relevant times including April 10, 2025, NYHT was a commercial helicopter company and common carrier that transports passengers for hire on charter, tour, photography and/or sightseeing flights throughout the New York City area for compensation.

85. NYHT, as the helicopter's operator, was responsible for the safety of its passengers during its flights.

86. At all relevant times including April 10, 2025, NYHC owed their passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi duties as a common carrier and commercial

charter helicopter carrier, including but not limited to the duty to exercise reasonable care in the maintenance, control, and operation of the helicopter so as not to cause injury or death to its passengers.

87. At all relevant times including April 10, 2025, NYHT had a non-delegable duty to ensure that the work performed by its employees, agents, servants and/or contractors, including but not limited to tour operators and pilots, was conducted in a safe and competent manner, and in such a way that did not present a potential risk to public safety or to its fare-paying passengers.

88. At all relevant times including April 10, 2025, NYHT, was aware that performing required maintenance on the helicopter was critical to ensure air worthiness and the safety of the passengers.

89. At all relevant times including April 10, 2025, NYHT was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades. Once delamination occurs, the main rotor blades are subject to premature failure.

90. At all relevant times including April 11, 2025, NYHT was aware, or should have been aware, of Airworthiness Directive AD-2021-01081-R that called for the repetitive inspection for delamination of the main rotor blades installed on the accident aircraft.

91. At all relevant times including April 11, 2025, NYHT was required to comply with Airworthiness Directive AD-2021-01081-R and identify signs of delamination to prevent the failure of the main rotor blades and to ensure the safety of their customers and passengers.

92. On April 10, 2025, NYHT breached the aforesaid duties to passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, in one or more of the following respects:

a. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform required maintenance on the helicopter to ensure that the helicopter was in satisfactory condition so that it would not present a risk of unreasonable harm to the passengers;

b. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform a preflight inspection on the helicopter;

c. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to ensure that the pilot was appropriately trained and competent to handle any inflight emergency;

d. by and through the careless, negligent, and reckless failure of its pilot, to properly diagnose and respond to the inflight emergency that occurred on the subject flight, for which NYHT is vicariously liable by virtue of the theory of *respondeat superior*, as described in further detail herein;

e. by carelessly, negligently, recklessly and/or with willful and wanton disregard for passenger safety, failing to provide air transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

f. by carelessly, negligently, recklessly, and/or with willful and wanton disregard for passenger safety, failing to properly inspect, overhaul, repair,

equip, modify and maintain the helicopter in an airworthy and safe condition;

g. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, operating without a properly qualified or effective Director of Safety and/or safety officer, and ignoring policies, procedures and safety management systems in place at NYHT to protect passenger safety;

h. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring policies, procedures and safety management systems in place within the company to protect passenger safety;

i. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring Airworthiness Directive AD-2021-01081-R that would have led to the discovery of delamination;

j. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, failing to inspect the main rotor blades for any signs of delamination;

k. by negligently failing to properly employ, supervise and train the pilot to ensure the safe and proper operation of the helicopter;

l. by negligently selecting, hiring, retaining, supervising, training, overseeing and controlling its agents, servants and employees in a manner reasonably calculated to ensure that its helicopters were properly maintained, inspected

and equipped, and that its pilots were capable of safely and properly operating its helicopters; and

m. by otherwise carelessly, negligently and/or recklessly failing to operate the helicopter with due care and caution in accordance with applicable procedures and safe practices.

93. As a direct and proximate result of the carelessness, negligence, recklessness, and/or willful and wanton disregard of passenger safety of NYHT, and their breach of their duties and failure to exercise the level of care appropriate and reasonable for the subject flight, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST DEFENDANT MICHAEL ROTH FOR NEGLIGENCE AND WRONGFUL DEATH**

94. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

95. At all relevant times including April 10, 2025, ROTH was the owner and sole shareholder of NYHC and NYHT, companies that provided services including the transport of passengers for hire on charter, tour, photography and/or sightseeing flights throughout the New York City area for compensation.

96. At all relevant times including April 10, 2025, ROTH, by virtue of his ownership of NYCH and NYHT, owed his passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, the

duty to exercise reasonable care and to avoid careless or reckless conduct in the control and operation of its helicopter so as not to cause injury or death to passengers.

97. At all relevant times April 10, 2025, ROTH, by virtue of his ownership of NYCH and NYHT, owed his passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, the duty to conduct flights in a careful, safe and competent manner, and in such a way that did not present a potential risk to public safety or to his fare-paying passengers.

98. On April 10, 2025, ROTH was directly responsible for the safe operation of the helicopter.

99. At all relevant times including April 10, 2025, ROTH was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades. Once delamination occurs, the main rotor blades are subject to premature failure.

100. At all relevant times including April 11, 2025, ROTH was aware, or should have been aware, of Airworthiness Directive AD-2021-01081-R that called for the repetitive inspection for delamination of the main rotor blades installed on the accident aircraft.

101. At all relevant times including April 11, 2025, ROTH was required to comply with Airworthiness Directive AD-2021-01081-R and identify signs of delamination to prevent the failure of the main rotor blades and to ensure the safety of their customers and passengers.

102. On April 10, 2025, ROTH breached the aforesaid duties that he owed to his passengers, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, in one or more of the following respects:

a. by operating the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform required maintenance to the accident helicopter;

b. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring Airworthiness Directive AD-2021-01081-R that would have led to the discovery of delamination;

c. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, failing to inspect the main rotor blades for any signs of delamination;

d. by carelessly, negligently, recklessly and/or with willful and wanton disregard for passenger safety, failing to provide air transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

e. by otherwise carelessly, negligently and/or recklessly failing to operate the helicopter with due care and caution in accordance with applicable procedures and safe practices.

103. As a direct and proximate result of ROTH'S carelessness, negligence, recklessness, and/or willful and wanton disregard for passenger safety and his breach of duties and failure to exercise the level of care appropriate and reasonable for the subject flight, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi suffered injuries and died by drowning in the Hudson River, and they, their Estates, and their surviving beneficiaries suffered damages as further detailed herein and below.

**<u>AS AND FOR A FOURTH CAUSE OF ACTION AS AGAINST DEFENDANTS MICHAEL ROTH, NEW YORK HELICOPTER CHARTER INC., AND NEW YORK HELICOPTER TOURS, LLC FOR VICARIOUS LIABILITY AS TO NEGLIGENCE AND WRONGFUL DEATH</u>**

104. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

105. At all relevant times including April 10, 2025, the pilot was an agent, servant, employee and/or otherwise acting under the direction and control of ROTH, NYHC and NYHT for their private and/or business benefit.

106. At all relevant times including April 10, 2025, the pilot was acting within the course and scope of his employment with ROTH, NYHC and NYHT.

107. At all relevant times including April 10, 2025, the pilot was engaged in acts which were foreseeable and naturally incidental to his employment with ROTH, NYHC and NYHT.

108. By reason of the aforesaid carelessness, negligence, recklessness, and/or willful and wanton disregard for passenger safety of the pilot and his breach of duties and failure to exercise the level of care appropriate and reasonable for the subject flight, ROTH, NYHC and NYHT are vicariously liable under the theory of *respondeat superior* for the damages sustained by Plaintiff, JOAN CAMPRUBI MONTAL, and Plaintiff's Decedents, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, as described in further detail herein and below.

**<u>AS AND FOR A FIFTH CAUSE OF ACTION AS AGAINST DEFENDANTS MICHAEL ROTH, NEW YORK HELICOPTER CHARTER INC. AND NEW YORK HELICOPTER TOURS, LLC FOR BREACH OF EXPRESS AND/OR IMPLIED WARRANTY</u>**

109. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

110. On or before April 10, 2025, ROTH, NYHC and NYHT expressly and/or impliedly warranted to its fare-paying passengers that the helicopter was properly maintained, tested, safe, airworthy and otherwise free from defects.

111. On April 10, 2025, as fare-paying passengers traveling on the helicopter, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi were beneficiaries of the warranties extended by ROTH, NYHC and NYHT.

112. At all relevant times including April 10, 2025, ROTH, NYHC and NYHT, breached their express and implied warranties to its fare-paying passengers insofar as the helicopter had not undergone required and necessary maintenance to ensure it was airworthy and safe for use.

113. On April 10, 2025, instead of allowing for safe and airworthy transport of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, the helicopter crash-landed on the Hudson River upside down.

114. As a direct and proximate cause of these breaches of warranty committed by ROTH, NYHC and NYHT, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi suffered injuries and died by drowning in the Hudson River, and they, their Estates and surviving beneficiaries suffered damages detailed herein and below.

**AS AND FOR A SIXTH CAUSE OF ACTION AS AGAINST DEFENDANT MERIDIAN FOR NEGLIGENCE AND WRONGFUL DEATH**

115. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

116. At all relevant times including April 10, 2025, MERIDIAN was a commercial helicopter company that owned and leased helicopters to a variety of operators, including operators that acted as a common carrier and would transport passengers for hire on charter, tour, photography and/or sightseeing flights throughout the New York City area for compensation.

117. MERIDIAN, as the owner of the helicopter, was responsible for the safety of all passengers during any flights of the helicopter.

118. At all relevant times including April 10, 2025, MERIDIAN owed passengers on the helicopter, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi duties as the owner of the helicopter including but not limited to the duty to exercise reasonable care in the inspection, maintenance, repair and control of the helicopter so as not to cause injury or death to its passengers.

119. At all relevant times including April 10, 2025, MERIDIAN, as the owner and lessor of the helicopter, had a non-delegable duty to ensure that the work performed by its lessees, employees, agents, servants and/or contractors, including but not limited to tour operators and pilots, was conducted in a safe and competent manner, and in such a way that did not present a potential risk to public safety or the passengers.

120. At all relevant times including April 10, 2025, MERIDIAN was aware that performing required maintenance on the helicopter was critical to ensure air worthiness and the safety of the passengers.

121. At all relevant times including April 10, 2025, MERIDIAN was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades. Once delamination occurs, the main rotor blades are subject to premature failure.

122. At all relevant times including April 11, 2025, MERIDIAN was aware, or should have been aware, of Airworthiness Directive AD-2021-01081-R that called for the repetitive inspection for delamination of the main rotor blades installed on the accident aircraft.

123. At all relevant times including April 11, 2025, MERIDIAN was required to comply with Airworthiness Directive AD-2021-01081-R and identify signs of delamination to prevent the failure of the main rotor blades and to ensure the safety of their lessees, customers and passengers.

124. On April 10, 2025, MERIDIAN breached the aforesaid duties to passengers on the helicopter, including Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi, in one or more of the following respects:

a. by allowing its lessees to operate the helicopter carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to perform required maintenance on the helicopter to ensure that the helicopter was in satisfactory condition so that it would not present a risk of unreasonable harm to the passengers;

b. by failing to ensure that the aircraft was properly tested, inspected and maintained to ensure that it was reasonably safe and fit for its particular purpose and intended use;

c. by allowing the helicopter to be operated carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to ensure a preflight inspection on the helicopter was performed before every flight;

d. by allowing the helicopter to be operated carelessly, negligently, recklessly and/or with willful and wanton disregard for the safety of passengers by failing to ensure that the pilot was appropriately trained and competent to handle any inflight emergency;

e. by carelessly, negligently, recklessly and/or with willful and wanton disregard for passenger safety, failing to ensure air transportation and carriage were provided in a manner reasonably calculated to ensure the safe completion of the subject flight;

f. by carelessly, negligently, recklessly, and/or with willful and wanton disregard for passenger safety, failing to properly inspect, overhaul, repair, equip, modify and maintain the helicopter in an airworthy and safe condition;

g. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, failing to ensure the helicopter was being operated under a properly qualified or effective Director of Safety and/or safety officer, and ignoring policies, procedures and safety management systems in place to protect passenger safety;

h. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring policies, procedures and safety management systems in place within the company to protect passenger safety;

i. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, ignoring Airworthiness Directive AD-2021-01081-R that would have led to the discovery of delamination;

j. by carelessly, negligently, recklessly and/or with a willful and wanton disregard for passenger safety, failing to inspect the main rotor blades for any signs of delamination;

k. by negligently failing to properly employ, supervise and train the pilot to ensure the safe and proper operation of the helicopter;

l. failing so supply parts for maintenance of the subject helicopter, including but not limited to the main rotor blades, that were free of defects, safe for flight, and fit for its particular purpose and intended use;

m. by negligently selecting, hiring, retaining, supervising, training, overseeing and controlling its agents, servants and employees in a manner reasonably calculated to ensure that its helicopters were properly maintained, inspected and equipped, and that pilots were capable of safely and properly operating its helicopters; and

n. by otherwise carelessly, negligently and/or recklessly failing to ensure the helicopter was operated with due care and caution in accordance with applicable procedures and safe practices.

125. As a direct and proximate result of the carelessness, negligence, recklessness, and/or willful and wanton disregard of passenger safety of MERIDIAN, and their breach of their duties and failure to ensure the level of care appropriate and reasonable for the subject flight was being exercised, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi,

Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A SEVENTH CAUSE OF ACTION AS AGAINST DEFENDANT BELL TEXTRON , INC. FOR WRONGFUL DEATH BASED ON STRICT LIABILITY**

126. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

127. At all relevant times, defendant BELL was engaged in the business of designing, testing, certifying, manufacturing, assembling, inspecting, marketing, servicing, maintaining, repairing, approving modifications of, distributing and/or selling helicopters and the equipment installed on helicopters, including the helicopter, and its component parts systems, protective equipment, and providing accompanying product support, product support materials, and continuing airworthiness materials with respect thereto, including service bulletins, service letters, service instructions, service manuals, inspection schedules and service life schedules, and did in fact design, develop, manufacture, sell or otherwise place into the stream of commerce in the ordinary course of business the helicopter, and its component parts, systems and protective equipment.

128. At all relevant times including April 10, 2025, the helicopter and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom, were being operated and used for the purpose and in the manner for which they were designed, developed, manufactured, assembled, tested, serviced, distributed and sold and intended to be used, all in a manner foreseeable to Defendant BELL and for which adequate and safe warnings were required to be issued.

129. At all relevant times including April 10, 2025, the helicopter and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom, were defective, unreasonably dangerous, unairworthy and unsafe for its ordinary users, including the plaintiffs, by reason of BELL'S defective design, manufacture, assembly, testing, inspection, service, supply, certification, distribution and sale of the helicopter, and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom, and by reason of inadequate and unsafe warnings.

130. The defects in the design, manufacture, assembly, instructions, warnings, testing, inspection, service, distribution, and/or sale of the helicopter and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom, existed at the time of the design, manufacture, assembly, inspection, testing, distribution and/or sale of the helicopter and its component parts, systems and protective equipment, including bot not limited to the main rotor system and tail boom, which were in substantially the same condition before the crash as when they left the hands of defendant Bell, and said defects caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

131. Defendant BELL is strictly liable in tort for the defective design, manufacture, distribution and sale of the helicopter and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom, and for defective warnings.

132. The manufacturing and design defects in the subject helicopter, and its component parts, systems and protective equipment, including but not limited to the main rotor system and

tail boom, and accompanying warnings, which caused or contributed to the crash and plaintiffs' pain and suffering and deaths, include one or more of the following: (a) the subject helicopter was defectively designed, manufactured, distributed, and/or sold in that it incorporated a defective and unreasonably dangerous main rotor system and tail boom, which failed prematurely and/or functioned improperly, due to a defect that occurred during the manufacturing process; (b) BELL sold and put in the stream of commerce a defective helicopter and held it out to be airworthy and fit for safe flight; (c) the defective and unreasonably dangerous main rotor system and tail boom contained material and components which were inadequate in strength, quality and/or performance; (d) BELL'S defective manufacturing, inspection, testing and/or quality control processes and techniques did not prevent defects which resulted in the manufacture, distribution and sale of an unreasonably dangerous and defective helicopter and its components, including the main rotor system and tail boom; (e) the defective, unreasonably dangerous and unsafe condition of the helicopter and the protective equipment (skids, cross tubes, seats and structural components) which failed to prevent and/or adequately protect passengers; (f) the helicopter and its component parts, systems and protective equipment were designed, manufactured, distributed and sold without adequate warnings of its defective and dangerous condition; (g) BELL knew or should have known of the defects in the helicopter; (h) BELL failed to correct the defects and dangerous conditions in the helicopter; (i) BELL was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades, and that once delamination occurs, the main rotor blades are subject to premature failure; and (i) BELL otherwise defectively designed, manufactured and sold the helicopter such that it was unreasonably dangerous, unsafe and unairworthy.

133. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the helicopter sustained a failure of the main rotor blades and/or tail boom that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AS AGAINST DEFENDANT BELL TEXTRON , INC. FOR WRONGFUL DEATH BASED ON NEGLIGENCE**

134. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

135. At all relevant times, defendant BELL owed plaintiffs a duty to exercise reasonable care to design, manufacture, assemble, test, inspect, maintain, operate, promote, warn, distribute, sell and/or place into the stream of commerce the helicopter and its component parts systems and protective equipment, including but not limited to the main rotor system and tail boom and manuals, and to do so in a reasonable and prudent manner so as not to allow the helicopter and main rotor system and tail boom to be unairworthy and/or otherwise unsafe and/or pose a risk of injury to the public, and Defendant BELL owed a duty of reasonable care to warn of any condition regarding the helicopter and its component parts, systems and equipment, including the main rotor system and tail boom, that could and did render the helicopter unsafe and unairworthy.

136. At all relevant times including April 10, 2025, defendant BELL, by and through its agents, breached its duty of reasonable care in that it negligently and carelessly designed, manufactured, assembled, tested, inspected, maintained, operated, stored, sold, promoted,

distributed and/or placed into the stream of commerce the helicopter and its component parts, systems and protective equipment, including but not limited to the main rotor system and tail boom and/or manuals such that the helicopter and its component parts were defective, unsafe, unairworthy and unreasonably dangerous.

137. At all relevant times including April 10, 2025, defendant BELL was negligent, by act or omission, and breached its duty of care owed to plaintiffs, in one or more of the following respects: (a) the helicopter and its component parts were defective, unsafe, unairworthy and unreasonably dangerous in that certain component parts, including the main rotor system and tail boom, were susceptible and prone to premature failure; (b) Bell negligently designed, manufactured, distributed, and/or sold the helicopter with a defective and unreasonably dangerous main rotor system and tail boom, which failed prematurely and/or functioned improperly, due to a defect that occurred during the manufacturing process; (b) BELL sold and put in the stream of commerce a defective helicopter and held it out to be airworthy and fit for safe flight; (c) BELL negligently failed to develop, implement, and/or perform adequate inspections, tests, quality assurance and quality control processes with respect to the manufacture, assembly, distribution and sale of the helicopter; (d) BELL negligently failed to ensure that the helicopter did not have a defective main rotor system and/or tail boom or other component parts, systems and equipment; (e) BELL negligently failed to reasonably and properly design, develop, manufacture, test, inspect, assemble, and sell the helicopter and its component parts, systems, and protective equipment, including but not limited to the main rotor system and tail boom in a manner suitable for its intended application; (f) BELL negligently failed to reasonably and properly select materials and components which were adequate in strength, quality and/or performance for the helicopter; (g) BELL negligently failed to develop and implement adequate manufacturing processes and

techniques to prevent the manufacture of defective parts and equipment; (h) BELL negligently failed to ensure that the helicopter and component parts, including but not limited to the main rotor system and tail boom, met applicable quality standards and specifications; (i) BELL negligently sold and put in the stream of commerce a defective helicopter, and component parts, systems and equipment and held them out to be airworthy and fit for a safe flight; (j) the helicopter and the protective equipment installed thereon (skids, cross tubes, seats and structural components) were negligently designed, manufactured assembled, distributed and/or sold in that they failed to adequately protect passengers; (k) BELL knew or should have known of the defects in the helicopter; (l) BELL negligently failed to correct the known defects and dangerous conditions in the helicopter; and (m) BELL otherwise negligently failed to design and manufacture the helicopter in such a way that it was safe and airworthy so as to prevent a failure of the main rotor system and/or tail boom and protect the passengers from injury or death.

138. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant BELL, the helicopter sustained a failure of the main rotor blades and/or tail boom that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A NINTH CAUSE OF ACTION AS AGAINST DEFENDANT BELL TEXTRON , INC. FOR WRONGFUL DEATH BASED ON BREACH OF WARRANTY**

139. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

140. At all relevant times, defendant BELL expressly and/or implicitly warranted and represented that the helicopter, including the main rotor system, tail boom, and component parts, systems and equipment installed thereon, was airworthy, or merchantable quality, fit and safe for the purposes for which it was designed, manufactured, assembled, tested, serviced, distributed, sold, intended and/or used, and the instructions and warning which had been issued were adequate and safe, and further the helicopter and all its component parts, including but not limited to the main rotor system and tail boom, were free from defects.

141. Defendant BELL breached said express and implied warranties in that at all relevant times including April 10, 2025, the helicopter and its component parts, systems and protective equipment, were not airworthy, or merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and/or used, and the instructions and warnings which had been issued were not adequate and safe but were defective.

142. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid breach of express and implied warranties by Defendant BELL, the helicopter sustained a failure of the main rotor blades and/or tail boom that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A TENTH CAUSE OF ACTION AS AGAINST DEFENDANT VAN HORN AVIATION, L.L.C FOR WRONGFUL DEATH BASED ON STRICT LIABILITY**

143. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

144. At all relevant times, defendant VHA was engaged in the business of designing, testing, certifying, manufacturing, assembling, inspecting, marketing, servicing, maintaining, repairing, approving modifications of, distributing and/or selling main rotor blades and providing accompanying product support, product support materials, and continuing airworthiness materials with respect thereto, including service bulletins, service letters, service instructions, service manuals, inspection schedules and service life schedules, and did in fact design, develop, manufacture, sell or otherwise place into the stream of commerce in the ordinary course of business the main rotor blades on the helicopter.

145. At all relevant times including April 10, 2025, the main rotor blades on the helicopter were being used for the purpose and in the manner for which they were designed, developed, manufactured, assembled, tested, serviced, distributed and sold and intended to be used, all in a manner foreseeable to Defendant VHA and for which adequate and safe warnings were required to be issued.

146. At all relevant times including April 10, 2025, the main rotor blades on the helicopter were defective, unreasonably dangerous, unairworthy and unsafe for its ordinary users, including the plaintiffs, by reason of VHA'S defective design, manufacture, assembly, testing, inspection, service, supply, certification, distribution and sale of the main rotor blades and by reason of inadequate and unsafe warnings.

147. The defects in the design, manufacture, assembly, instructions, warnings, testing, inspection, service, distribution, and/or sale of the main rotor blades were in substantially the same condition before the crash as when they left the hands of defendant VHA and said defects caused

the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

148. Defendant VHA is strictly liable in tort for the defective design, manufacture, distribution and sale of the main rotor blades and for defective warnings.

149. The manufacturing and design defects in the main rotor and accompanying warnings, which caused or contributed to the crash and plaintiffs' pain and suffering and deaths, include one or more of the following: (a) the subject main rotor blades were defectively designed, manufactured, distributed, and/or sold in that they were susceptible to delamination and premature failure; (b) VHA sold and put in the stream of commerce defective main rotor blades and held them out to be airworthy and fit for safe flight; (c) the defective and unreasonably dangerous main rotor blades contained material which was inadequate in strength, quality and/or performance; (d) VHA'S defective manufacturing, inspection, testing and/or quality control processes and techniques did not prevent defects which resulted in the manufacture, distribution and sale of unreasonably dangerous and defective main rotor blades; (e) the main rotor blades were designed, manufactured, distributed and sold without adequate warnings of their defective and dangerous condition; (f) VHA knew or should have known of the defects in the main rotor blades; (g) VHA failed to correct the defects in the main rotor blades that resulted in a dangerous condition in the helicopter; (h) VHA was aware that the main rotor blades on the helicopter were susceptible to delamination, the separation of the layers of the materials that make up the blades, and that once delamination occurs, the main rotor blades are subject to premature failure; and (i) VHA otherwise

defectively designed, manufactured and sold the main rotor blades helicopter such that it rendered the helicopter unreasonably dangerous, unsafe and unairworthy.

150. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the helicopter sustained a failure of the main rotor blades that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION AS AGAINST DEFENDANT VAN HORN AVIATION, L.L.C. FOR WRONGFUL DEATH BASED ON NEGLIGENCE**

151. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

152. At all relevant times, defendant VHA owed plaintiffs a duty to exercise reasonable care to design, manufacture, assemble, test, inspect, maintain, operate, promote, warn, distribute, sell and/or place in the stream of commerce the main rotor blades on the helicopter and to do so in a reasonable and prudent manner so as not to allow the helicopter and main rotor system to be unairworthy and/or otherwise unsafe and/or pose a risk of injury to the public, and Defendant VHA owed a duty of reasonable care to warn of any condition regarding the main rotor blades that could and did render the helicopter unsafe and unairworthy.

153. At all relevant times including April 10, 2025, defendant VHA, by and through its agents, breached its duty of reasonable care in that it negligently and carelessly designed, manufactured, assembled, tested, inspected, maintained, operated, stored, sold, promoted,

distributed and/or placed into the stream of commerce the main rotor blades and/or manuals such that the main rotor blades were defective, unsafe, unairworthy and unreasonably dangerous.

154. At all relevant times including April 10, 2025, defendant VHA was negligent, by act or omission, and breached its duty of care owed to plaintiffs, in one or more of the following respects: (a) the main rotor blades were defective, unsafe, unairworthy and unreasonably dangerous in that they were susceptible and prone to premature failure; (b) VHA negligently designed, manufactured, distributed, and/or sold the main rotor blades knowing the main rotor blades were defective and unreasonably dangerous and subject to premature failure due to a defect that occurred during the manufacturing process; (c) VHA sold and put in the stream of commerce defective main rotor blades and held them out to be airworthy and fit for safe flight; (d) VHA negligently failed to develop, implement, and/or perform adequate inspections, tests, quality assurance and quality control processes with respect to the manufacture, assembly, distribution and sale of the main rotor blades; (e) VHA negligently failed to ensure that the main rotor blades were not defective; (f) VHA negligently failed to reasonably and properly design, develop, manufacture, test, inspect, assemble, and sell the main rotor blades in a manner suitable for their intended application; (g) VHA negligently failed to reasonably and properly select materials which were adequate in strength, quality and/or performance for the main rotor blades; (h) VHA negligently failed to develop and implement adequate manufacturing processes and techniques to prevent the manufacture of defective parts and equipment; (i) VHA negligently failed to ensure that the main rotor blades met applicable quality standards and specifications; (j) VHA negligently sold and put in the stream of commerce defective main rotor blades and held them out to be airworthy and fit for a safe flight; (k) VHA negligently failed to correct the known defects and dangerous conditions in the main rotor blades; and (l) VHA otherwise negligently failed to design

and manufacture main rotor blades in such a way that they were safe and airworthy so as to protect the passengers from injury or death.

155. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant VHA, the helicopter sustained a failure of the main rotor blades that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**AS AND FOR A TWELFTH CAUSE OF ACTION AS AGAINST DEFENDANT VAN HORN AVIATION, L.L.C. FOR WRONGFUL DEATH BASED ON BREACH OF WARRANTY**

156. Plaintiffs incorporate and re-allege each of the allegations set forth above as though fully set forth herein.

157. At all relevant times, defendant VHA expressly and/or implicitly warranted and represented that the main rotor blades were airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and/or used, and the instructions and warning which had been issued were adequate and safe, and further the main rotor blades were free from defects.

158. Defendant VHA breached said express and implied warranties in that at all relevant times including April 10, 2025, the main rotor blades were not airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and/or used, and the instructions and warnings which had been issued were not adequate and safe but were defective.

159. At all relevant times including April 10, 2025, as a direct and proximate result of one or more of the aforesaid breach of express and implied warranties by Defendant VHA, the helicopter sustained a failure of the main rotor blades and/or tail boom that caused the helicopter to crash and plaintiffs, Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi died by drowning in the Hudson River, and they, their Estates and their surviving beneficiaries suffered the damages detailed herein below.

**DAMAGES**

160. As a direct and proximate result of the acts and omissions described above, Agustin Escobar Cañadas, Merce Camprubi Montal and Merce Escobar Camprubi, suffered injuries and perished in the Hudson River on April 10, 2025. Agustin Escobar Camprubi and Victor Escobar Camprubi were rescued from the Hudson River following the crash and later perished at the Jersey City Medical Center. All decedents were alive and conscious when the helicopter crashed into the Hudson River.

161. Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi all experienced severe pre-impact terror and fear from impending death, and all suffered severe physical pain, mental anguish and terror prior to perishing.

162. Accordingly, the Estates of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi, and Victor Escobar Camprubi are entitled to recover damages from all defendants for their severe conscious physical pre-death pain and suffering, severe mental anguish, and pre-impact terror.

163. Plaintiff, JOAN CAMPRUBI MONTAL, further suffered severe mental anguish and other compensatory damages as a direct and proximate result of the loss of Agustin Escobar Cañadas, Merce Camprubi Montal, Agustin Escobar Camprubi, Merce Escobar Camprubi and Victor Escobar Camprubi ("decedents"), including but not limited to:

a. the loss of decedents' companionship, society and comfort;

b. the loss of decedents' financial support;

c. the loss of decedents' services;

d. the grief and sorrow caused by losing decedents and his awareness of the terrifying nature of their final moments.

WHEREFORE, Plaintiffs, JOAN CAMPRUBI MONTAL and KATHLEEN BEATTY, ESQ. Proposed Personal Representatives of the Estates of AGUSTIN ESCOBAR CAÑADAS, deceased, MERCE CAMPRUBI MONTAL, deceased, AGUSTIN ESCOBAR CAMPRUBI, deceased, MERCE ESCOBAR CAMPRUBI, deceased, and VICTOR ESCOBAR CAMPRUBI, deceased, and on behalf of all surviving beneficiaries demands judgment against Defendants NEW YORK HELICOPTER CHARTER, INC., NEW YORK HELICOPTER TOURS, LLC., MICHAEL ROTH, MERIDIAN HELICOPTERS, L.L.C., BELL TEXTRON, INC. and VAN HORNE, L.L.C. for compensatory and punitive damages, in an amount exceeding the jurisdictional limits of all lower courts of the State of New York, together with interest, costs, disbursements and attorneys' fees of this action.

**JURY DEMAND**

Plaintiffs respectfully demand a trial by jury.

New York, NY
Dated: May 15, 2026

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: */s/ Jason Vincent*
Jason L. Vincent
Justin T. Green
Erin R. Applebaum
Vincent C. Lesch
485 Lexington Avenue
New York, New York 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432
Email: jgreen@kreindler.com
Email: jvincent@kreindler.com
Email: eapplebaum@kreindler.com
Email: vlesch@kreindler.com

GERSOWITZ, LIBO & KOREK, P.C.
Jeff Korek
111 Broadway, 12th Floor
New York, New York 10006
Tel: (646) 518-1258
Fax: (212) 385-4417
Email: jkorek@lawyertime

*Attorneys for Plaintiff*